IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GUILHERME CASALICCHIO, § | | |
|    Plaintiff § | | |
| § | | |
| v. § | CIVIL ACTION NO. | |
| § | | |
| BOKF, N.A., dba § | | |
| BANK OF TEXAS § | 4:18-CV-00160 | |
|    and § | | |
| FEDERAL HOME LOAN § | | |
| MORTGAGE CORPORATION, § | | |
| dba FREDDIE MAC § | | |
|    Defendants § | | |

**PLAINTIFF'S RESPONSE TO BOKF'S MOTION FOR
ATTORNEY FEES (Doc. 49)**

## TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    *Velazquez* Is Easily Distinguishable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    The Standard of Review Is Abuse of Discretion . . . . . . . . . . . . . . . . . . . . . 2

III.   The Fees Are Not Reasonable and Necessary Because the Bank Needlessly
     Made Them "Necessary" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IV.   The Bank Caused the Problem When it Breached the Contract . . . . . . . . . . 6

V.    The Bank's Misstatements and Lack of Candor in its Responses . . . . . . . . 10

VI.   Lack of Candor to the Tribunal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**TABLE OF AUTHORITIES**

*Bank of New York Mellon v. Chamberlain*, No. 2019-00876-COA-R3-CV, Court of Appeals of Tennessee, at Nashville, February 5, 2020 . . . . . . . . . . . . . . . . . . . . . . 9

*Christ v. Deutsche Bank National Trust Company Americas,* No. 2D19-4131, District Court of Appeal of Florida, Second District, March 12, 2021 . . . . . . . . . . . . . . . 10

*El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757 (Tex. 2012) . . . . . . . . . . . . . . . . . . . . . 3

*Ex Parte Turner*, 542 So.3d 207 (AL. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Fox v. Thoreson*, 398 S.W.2d 88 (Tex. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Velazquez*, 660 F.3d 893 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

*Pinti v. Emigrant Mortgage Company*, Inc., 472 Mass. 226, 33 N.E.3d 1213 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 9

*Woel v. Christiana Trust as Trustee*, 288 A.3d 339 (R.I. 2020) . . . . . . . . . . . . . . 9

## SUMMARY OF THE ARGUMENT

Plaintiff Guilherme Casalicchio is opposed to Defendant BOKF, N.A.'s ("BOKF" or "Bank") Motion For Attorney Fees ("Application") because it has no relationship to what was reasonable under the circumstances that the Bank itself created. It has no rational or legal basis. Had the Bank simply complied with the clear terms of the contract that both it and Freddie Mac required for the loan then there would have been no litigation at all.

### I. *Velazquez* Is Easily Distinguishable

The Application and the Fifth Circuit's opinion rely entirely on *In re Velazquez*, 660 F.3d 893, 895 (5th Cir. 2011), a bankruptcy case, for the proposition in Paragraph 9 in the Deed of Trust that after the borrower is in breach then the "Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument." Doc. 49, 3.

On the next it says that Paragraph 14 allows attorney fees "for the purpose of protecting Lender's interest in the property and rights under this Security Instrument." *Id.;Velazquez* at 896.

These paragraphs each presuppose that the Lender is not in breach of a relevant part of the same Security Instrument, such as Paragraph 22, that limits its rights in the property and under the Security Instrument. There was no claim in *Velazquez* that the

lender there failed to do what was contractually required. The issue was only if the bankruptcy effected its ability to be paid for enforcing those rights. *Velazquez* at 894.

The Bank had no contractual right to foreclose based on a default letter that did not comply with the contractual terms in Paragraph 22. Nor is there an equitable right of foreclosure based on noncompliance, but that is what it granted itself.

*Velazquez* is clearly distinguishable because it does not say that the Lender is entitled to attorney fees to resist the Borrowers' objection to the Lender's violating the clear contractual terms in Paragraph 22, as is the case here. It allowed fees for complying with the contract, not violating it.

The Application fails because the attorney's fees sought were not for protecting either a valid right in the property or a right under the Security Instrument.

## II.     The Standard of Review Is Abuse of Discretion

The Application used the word "reasonable" a dozen times and "reasonableness" three more. The first paragraph says the "requested fees are reasonable and modest." Doc. 49. Its use of those terms does not match the dictionary definition.

"The reasonableness of the [fee] award is to be judged by the abuse of discretion standard of review." *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974). It was not an abuse of discretion for the Court to refuse to

award the Bank any attorney fees for its manufacturing of the needless and avoidable litigation resulting from its admitted failure to comply with the terms of the contract it required for the loan. This is especially true considering the documented misstatements by the Bank and its counsel that were never withdrawn. The denial is supportable under the Court's discretion.

"The award of attorney's fees generally rests in the sound discretion of the trial court." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012). It was within the Court's discretion to deny fees under the circumstances the Bank created.

Had the Bank simply complied with the conditions set in its own document, after repeatedly being shown the problem in writing, that would have allowed Mr. Casalicchio to recover his remaining equity and the Bank to be paid in full, without the need for any litigation. Instead, he has lost everything and the Bank is trying to make it worse.

Mr. Dorwart's affidavit in support of the Application confirmed that he was responsible for determining the pre-billing adjustments and post-billing adjustments of $104,081 [Doc.49, 5] that "reflect courtesy discounts and credits to the client, and deductions for entries, that although includable, may arguably be considered excessive or redundant." Doc. 49-1,¶6. Yet he says they still want $212,519.25. Doc. 49, 6. There is no reasonable hourly rate for work that was not needed.

When the Bank drafted the Labor Day Default Letter, what it calls the Cure Notice, it had not yet hired an attorney. It had no responsibility for any legal fees. The amount that document demanded to cure the default was "$7,753.12 less any funds held in suspense." Doc. 24-8, 1[1]. Since then they have allegedly incurred over $316,000.00 in attorney fees on the account, more than forty times the amount of the original default, to get back where they could have been without spending a dime on lawyers, or paying SDTX admission fees of $181.00 each for two of the ten Oklahoma lawyers who worked on the case. Doc. 49-2, 21. That was not reasonable and it was not necessary.

There is nothing reasonable here. The Application is based on the "heads I win, tails you lose" standard. The Bank admitted it violated the terms of Paragraph 22 in the Deed of Trust (Doc. 24-2) before it conducted the disputed foreclosure but complains the Court erred by refusing to award it attorney fees under Paragraphs 9 and 14 to pay it for defending against Mr. Casalicchio's objection to the admitted breach. Either the contractual terms mean something or they do not.

Strictly applying the terms of Paragraph 22 would have found the foreclosure was based on a breach of contract and provided the basis for attorney fees for Mr.

---

[1] The documents cited herein are almost exclusively the document that the Application is based on, Doc, 24, the Bank's Motion For Summary Judgment.

*CASALICCHIO v. BOKF, N,A.* - Fee Application Response - Page 4

Casalicchio for the roughly three hundred (300) combined hours of legal work required to oppose the Bank's 655.15 hours defending its breach of the Deed of Trust in the district court [Doc. 49-2, 22] and the other 192.90 in the Fifth Circuit. Doc. 49-3, 11.

**III. The Fees Are Not Reasonable and Necessary Because the Bank Needlessly Made Them "Necessary"**

The Application is based on the alleged reasonableness of BOKF's actions that were "necessary" in response to Mr. Casalicchio's payment default. In fact there was no reason at all for the Bank to have hired outside counsel, or been involved in litigation at all, if it had only followed the clear terms in the Deed of Trust, the contract that Defendant Freddie Mac required BOKF to use in the first place. It did not follow those terms. In has admitted and proven by its own documents that it did not. It now seeks a reward of attorney fees for its own breach of contract.

The Bank made itself the judge of the dispute before and after its actions made it necessary to file the case. It then used that "power" to self-excuse its own breach of contract. No claim of the reasonableness of the fees it made itself incur defending its own breach of contract has any support in logic or common sense or law.

The Bank's self-importance carries through to the Application where it complains "Plaintiff was unusually aggressive in prosecuting the merits of the case,

long after the ultimate outcome was, or should have been, known." Doc. 49, 6. That implies that the attorneys in the case decide the outcome, not the Court. That may be the standard in Tulsa, Oklahoma, where the Bank is the biggest one in the state, and its law firm among the biggest, but it is inapplicable here. It is particularly out of place in that the Application is based on the Bank's disagreeing with the Court's decision.

### IV. The Bank Caused the Problem When it Breached the Contract

Mr. Casalicchio sent the Bank a Request For Information / Notice Of Error ("RFI") letter on September 11, 2017. Doc. 24-20, 6-11. Request 3 asked for "a copy of the default letter that was required to be sent to him by Paragraph 22 of the Deed of Trust to initiate the foreclosure process and proof of when it was sent to him by certified mail." Doc. 24-20, 7. He also sent a copy to Michael Schroeder, one of the literally seventeen people appointed as a substitute trustee with authority to conduct the disputed foreclosure sale. Doc. 24-22, 7; Doc. 24-16.

There is no requirement for the substitute trustees to be lawyers and most were not; however, Mr. Schroeder is. Paragraph 1 of his September 20, 2017, response provided what proved to be a critical misstatement of fact on behalf of BOKF where it said "On September 5, 2016, Bank of Texas Mortgage sent its statutorily required demand letter." Doc. 24-22, 1. It included a copy of that letter, and the certified

mailing tracking number, but no proof of the date it was mailed. Doc. 24-22, 3-4. The Bank itself was the source of the misinformation that Mr. Schroeder apparently did not investigate before passing it on.

Based on a public search of the USPS tracking number that he and the Bank provided it became clear that the Labor Day Default Letter, dated September 5, 2016, was not actually mailed until September 12, 2016, a week later. Doc. 24-21, 5. The October 5, 2016, deadline it set was only twenty-three (23) days later, not the thirty (30) contractually required by Paragraph 22 in the Deed of Trust, a standard form required by Defendant Freddie Mac and its sister institution Fannie Mae. Doc. 24-2,13.

The October 12, 2017, followup letter to Mr. Schroeder gave him a copy of the USPS data showing that the Labor Day Default Letter was not actually mailed until September 12, 2016, and that it failed to give the contractually required thirty days of notice. Doc. 24-21, 2-6. It included a settlement offer that would have allowed Mr. Casalicchio to retain his equity in return for giving up claims on the defective foreclosure.

Nothing further was heard from Mr. Schroeder.

Paragraph 34 of the Plaintiff's Original Petition (Doc. 1-1) pointed to the ruling by the Supreme Judicial Court of Massachusetts on the importance of the same

Paragraph 22 in a Fannie Mae/Freddie Mac mortgage.

> "We agree with the plaintiffs that strict compliance with the notice of default provisions in paragraph 22 of the mortgage was required as a condition of a valid foreclosure sale, and that Emigrant failed to meet the strict compliance requirement. Accordingly, we reverse the allowance of the defendant Emigrant's motion to dismiss and of the defendant Wilion's motion for summary judgment." *Pinti v. Emigrant Mortgage Company*, Inc., 472 Mass. 226, 227; 33 N.E.3d 1213 (2015).

Paragraph 35 showed that on September 1, 2017, that same logic was relied on by the Supreme Court of Alabama in interpreting notice requirements in Paragraph 22 of a Fannie Mae/Freddie Mac form:

> Wells Fargo failed to provide the Turners with proper notice under the mortgage. Accordingly, because Wells Fargo failed to comply with the requirements of the mortgage, the mortgage sale conducted on February 27, 2012, failed. See Jackson, 90 So. 3d at 173 (holding that a foreclosure sale failed to pass title to the purchaser because the mortgagee failed to strictly comply with the terms of the mortgage in giving notice to the defaulting mortgagor). *Ex Parte Turner*, 542 So.3d 207, 213 (AL. 2017).

On June 2, 2020, eighteen months after the decision against Mr. Casalicchio here, the Supreme Court of Rhode Island followed Massachusetts and Alabama in requiring strict compliance in a non-judicial foreclosure state.

> "In sum, the default notice failed to strictly comply with paragraph 22 because it failed to inform plaintiff of the right to reinstate after acceleration. Because the default notice failed to strictly comply with paragraph 22, defendants failed to satisfy the condition precedent to a valid foreclosure. Accordingly, we deem the foreclosure sale to be void.

> The potential impact this new rule of law could have on the finality of foreclosures has not escaped us. To the extent that this opinion is viewed as a new rule of law, it is to be given prospective effect. See State v. Arpin, 122 R.I. 643, 657, 410 A.2d 1340, 1347 (1980) (explaining that, in the past, the Court "has chosen to apply new rules of law in the manner best suited to serve the interests of justice and to avoid hardship"). Specifically, the pronouncement in this opinion applies to the case at bar and to cases pending in the Superior Court in which this specific issue has been, or may be, raised." *Woel v. Christiana Trust as Trustee*, 288 A.3d 339, 347-348 (R.I. 2020).

*Woel* found "other states, including Massachusetts, Alabama, and Minnesota, also require strict compliance with paragraph 22 as a condition precedent to a valid foreclosure." *Woel* n 11. It cited *Pinti* as "instructive." *Woel* at 46.

Research has not found a supreme court decision in any state going the other way.

Tennessee could well become the fifth state in the chain. "Provisions in a deed of trust directing that notice shall be given in a particular matter are mandatory and must be strictly followed... Here, Appellant contends that the record contains no notice prior to acceleration that meets the requirements of the Deed of Trust." *Bank of New York Mellon v. Chamberlain*, No. 2019-00876-COA-R3-CV, Court of Appeals of Tennessee, at Nashville, February 5, 2020. A copy is attached.

Florida, a judicial foreclosure state, could become the sixth. "Because Deutsche Bank failed to offer competent, substantial evidence to prove that it had complied

with Paragraph 22 of the mortgage, we must reverse and remand for entry of judgment in favor of Christ." *Christ v. Deutsche Bank National Trust Company Americas,* No. 2D19-4131, District Court of Appeal of Florida, Second District, March 12, 2021. A copy is attached.

The Fifth Circuit's decision on Paragraph 22 was based on an *Erie* guess that has no support and was contrary to the national trend. It is an outlier.

Enforcing the terms in a contract as written is not a new concept in Texas law. "[L]anguage used by the parties should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated." *Fox v. Thoreson*, 398 S.W.2d 88, 92 (Tex. 1966). It is not reasonable that BOKF's failure to comply with the clear language in Paragraph 22 of the Deed of Trust document that it chose to use should be the basis to award it attorney fees for that contractual breach. The opposite should have happened.

Every cent of attorney fees the Bank requests from Mr. Casalicchio is based on the false representation in Mr. Schroeder's letter and the incomplete evidence he sent with it. The Bank was the source of the incompleteness. The Application is the fruit of the poisonous tree.

## V.    The Bank's Misstatements and Lack of Candor in its Responses

The Bank's first direct response was the September 12, 2017,

"Acknowledgment of Complaint" letter from Laura Weldon in Loan Servicing saying the RFI had been received. It was not from a law firm. The October 10, 2017, letter that the Bank sent a month later addressing the questions in the RFI was on its own stationery and was neither by nor from an attorney. Doc. 24-22, 17-21.  It included "In response to Item No. 3, the Bank has enclosed responsive documentation."  That "responsive documentation" did not include the actual receipt from the Post Office, showing a mailing date of September 12, 2016, that it later provided in discovery. Doc. 29-1. Whether negligently or intentionally it failed to respond in a competent manner and hid its own records.

 Failing to provide that requested receipt, that was in its own records, after having the month from September 12, 2017, to October 10, 2017, to find it, was not reasonable. If they knew they had it, and chose not to send it, that would be worse.

 The Bank's lead attorney, sent her first correspondence on October 20, 2017, five weeks after the initial response from the Bank on September 12, 2017. In Paragraph 2 it misstated the truth when it said "first and foremost, your client was given all required delinquency and foreclosure notices." Doc. 24-22, 22. Clearly he was not, as the Bank would later admit.  A demonstrably false statement by one lawyer to another lawyer should not entitle the lawyer who made the false statement to recover attorney fees.

At the time she sent that letter the attorney had access to the proof from the USPS printout that was sent to Mr. Schroeder showing that the Labor Day Default Letter was mailed a week late and did not meet the contractual deadline in the Deed of Trust. She also had access to the proof in the Bank's records - the stamped receipt from the post office. As the Application says, the Bank is "a longstanding client of the firm." Doc. 49, 5.

Curiously, Doc. 29-1, which it labeled as "BOKF 000157" which it had in its possession since September 12, 2016, was not produced with the Initial Disclosures filed on April 17 2018, that stopped at page BOKF 000154. It was only finally produced in discovery and even there it was hidden. A copy is attached in Plaintiff's Exhibit 8 at 12.

Request For Production 5 asked for "the document that shows the Labor Day Default Letter was actually placed in the custody of USPS in Tulsa, Oklahoma, on September 5, 2016. The Response was "There are no documents responsive to Request No. 5." Plaintiff's Exhibit 8.

Request For Production 6 asked for "the document that explains why the Labor Day Default Letter was not first received by the USPS until September 12, 2016, as shown in Plaintiff's Exhibit 2." The Response said "There are no documents responsive to Request No. 6." *Id.* Yet, the unreferenced Page BOKF 000157 was

silently included.

Request For Production 10 asked for "The document that allows you or anyone else to issue a valid default notice as a basis for acceleration fo the Note that did not comply with the terms in Paragraph 22 of tht Deed of Trust, as shown on Page BOKF-000017 that you provided in your Initial Disclosure." The Response was "BOKF objects to Request for Production No. 10 as it does not describe the document requested with reasonable particularity and BOKF is unable to discern what is being requested. Further BOKF objects to Request for Production No. 10 as it seeks information protected by the work produce privilege, misstates the record, and it calls for a legal conclusion." *Id.*

Had the Bank simply acknowledged the undeniable truth in its own records that the Labor Day Default Letter was not mailed on September 5, 2016, but on September 12, 2016, and that the contractual deadline in Paragraph 22 had not been met, then each side would have been spared the roughly eleven hundred forty-eight (655+ 300+ 193 = 1148) hours of legal work that the misstatement, magnified by the apparent lack of research, made "necessary".

The misstatements continued. The Case Summary in the Bank's Motion For Summary Judgment includes that it "ultimately held a properly noticed foreclosure sale on July 4, 2017." Doc.24, 9. Its own documents show that is not correct because

there was no proper contractual basis for the sale.

That conflicted with Undisputed Material Fact 7 in the Motion For Summary Judgment that finally admitted "On September 12, 2016, BOKF delivered the Cure Notice to the postal service. Ex. 7." Doc.24, 14. Which in turn conflicted with the false statement in the heading "I. Acceleration and the Foreclosure Sale Were Properly Noticed Pursuant to Both Statutory and Contractual Requirements." Doc.24, 18.

The first paragraph after that says "BOKF **properly noticed both the acceleration and foreclosure** per contractual and statutory requirements." *Id.* Emphasis in the original. Clearly it did not.

The first amount the Bank seeks is from work done on December 22, 2017 and dealt with potentially dismissing the case. Doc.49-2, 2. Everything before that has been waived. If BOKF had been honest in their assessment of the mailing delay then the case would never needed to be filed and there would have been no need to hire counsel.

There is nothing reasonable about making litigation "necessary" when a party's position is based on denying the terms of its own documents, failing to provide those documents when that could have avoided litigation, and ignoring the public records it has been given.

Despite the lack of candor to opposing counsel, the Bank is asking to be reimbursed for the needless actions it made "necessary."

## VI. Lack of Candor to the Tribunal

There was also a lack of candor to the tribunal from the very beginning, starting with the Defendant's Original Answer, highlighted in Paragraphs 28, 29, and 30. Doc. 1-2, 5.

The Petition was filed in state court, but answered paragraph by paragraph as if under the federal rules. Paragraph 28 said:

> "The Court can take judicial notice that Monday, September 5, 2016, was Labor Day, a national holiday when banks and courts are traditionally closed. It is unlikely the Default Letter was actually signed and mailed by a Bank employee on that holiday. Despite repeated presuit requests for evidence that the Bank employee was working on Labor Day none has been provided."

The Answer said "BOKF admits the existence of Labor Day, a national holiday, September 5, 2016. BOKF denies the remaining allegations contained in paragraph 28." There was no good faith for that denial since the Bank clearly knew it was closed for the holiday; banks are always closed on Labor Day. It later admitted the letter was automatically printed when the Bank was closed for the holiday and that it was not actually mailed until a week later on September 12, 2016.

Paragraph 29 said "A search on the postal service website[2] of the certified mail tracking number that the Bank gave to attorney Schroeder to provide on behalf of the Bank shows that the postal system did not first receive the Default Letter in Tulsa, Oklahoma, where it was mailed from, until September 12, 2016, a week after the date on the document." Doc. 1-1, 24.

The Answer said "BOKF lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29, and therefore denies same." That was another false denial. Another misrepresentation.

Paragraph 30 in the Petition said "The unavoidable conclusion is that the Default Letter was not mailed by a Bank employee in Tulsa, Oklahoma on or before Labor Day 2016." In response the Answer denied reality when it said "Paragraph 30 of the Original Petition is merely self-serving argument to which no response is necessary. To the extent a response is required, BOKF denies such allegations."

That denial was clearly false. The Bank knew it was closed on Labor Day, a day that is typically referred to as a "bank holiday." When the Answer was filed on January 11, 2018, it had possession of the original record from the post office showing the September 12, 2016 mailing date. Doc. 29-1. It had a copy of the letter with the USPS receipt telling it the same thing. It could have looked at the website

---

[2] www.usps.com

itself. Doc. 24-21, 5.

These three paragraphs, the heart of the case, do not meet the standards in FED. R. CIV. P. 8(b)(2) "*Denials - Responding to the Substance.* A denial must fairly respond to the substance of the allegation." They highlight the thorough lack of reasonableness that BOKF brought to the case ab initio. It is that lack of reasonableness for which they now seek compensation.

The Bank knew how to amend its answer if it wanted to. It did so for Paragraph 10 where it denied how the Note in its possession was endorsed. Doc. 14. The Court allowed the amendment on June 4, 2018. Doc. 16.

The Amended Answer filed the next day, June 5, 2018, changed only that Paragraph. It left the known misrepresentations in Paragraphs 28, 29, and 30, as they were. Doc. 17.

## PRAYER

Wherefore, premises considered, Mr. Casalicchio prays that the Court find denying attorney fees to the Bank was within its discretion, that the Application be denied, and that he be granted any other relief he may be entitled to at law and in equity.

Respectfully submitted,

/s/ Ira D. Joffe
Ira D. Joffe
SBN 10669900 : SDTX 19308
Attorney In Charge For Plaintiff
6750 West Loop South, Suite 920
Bellaire, TX 77401
15usca@gmail.com
(713) 661-9898
(888) 335-1060 Fax

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was filed by ECF to be served to all parties in interest on June 1, 2021.

/s/ Ira Joffe
Ira Joffe