# GWEN E. CHRIST, Appellant,

v.

# DEUTSCHE BANK NATIONAL TRUST COMPANY AMERICAS, as trustee for Residential Accredit Loans Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS13, Appellee.

Case No. 2D19-4131.

**District Court of Appeal of Florida, Second District.**

Opinion filed March 12, 2021.

Appeal from the Circuit Court for Lee County; James R. Thompson, Senior Judge.

Jeff Barnes of W. J. Barnes, P.A., Boca Raton, for Appellant.

Michael R. Esposito and Nicole R. Topper of Blank Rome LLP, Tampa, for Appellee.

VILLANTI, Judge.

In this mortgage foreclosure action, Gwen E. Christ appeals the final judgment of foreclosure entered in favor of Deutsche Bank National Trust Company Americas, as trustee for Residential Accredit Loans, Inc., Mortgage Asset-Backed Pass-Through Certificates, Series 2005-QS13 (Deutsche Bank) after a bench trial. Because Deutsche Bank failed to offer competent, substantial evidence to prove that it had complied with Paragraph 22 of the mortgage, we must reverse and remand for entry of judgment in favor of Christ. Christ also raises other grounds for reversal, but we find them to be without merit and decline to address them further.

"[A] mortgagee's right to the security for a mortgage is dependent upon its compliance with the terms of the mortgage contract, and it cannot foreclose until it has proven compliance." DiSalvo v. SunTrust Mortg., Inc., 115 So. 3d 438, 439 (Fla. 2d DCA 2013) (emphasis added) (citing F.A. Chastain Constr., Inc., v. Pratt, 146 So. 2d 910, 913 (Fla. 3d DCA 1962)); see also Gorel v. Bank of N.Y. Mellon, 165 So. 3d 44, 47 (Fla. 5th DCA 2015) (quoting DiSalvo, 115 So. 3d at 439). Hence, to be entitled to a foreclosure judgment in its favor, Deutsche Bank was required to offer evidence at the bench trial sufficient to prove that it had complied with all of the terms of the mortgage, including, among other things, the requirements of Paragraph 22.

Paragraph 22 required Deutsche Bank to provide written notice to Christ that the loan was in default and that the debt was being accelerated, how the default could be cured, and what amount was required to be paid in order for the default to be cured. Paragraph 22 also required that Deutsche Bank provide at least thirty days' notice within which Christ could cure the default before further action would be taken. Further, Paragraph 22 required Deutsche Bank to send this letter by first class mail or have it actually delivered to Christ. See generally DiSalvo, 115 So. 3d at 439 (summarizing the notice and cure requirements spelled out in Section 22 of the mortgage contract in that case); see also Figueroa v. Fed. Nat'l Mortg. Ass'n, 180 So. 3d 1110, 1116 (Fla. 5th DCA 2015) (same). If Deutsche Bank did not satisfy these notice prerequisites, any action to foreclose on the security for the note, i.e., Christ's residence, would be premature.

Here, Deutsche Bank offered into evidence at trial the printed images of two "demand" letters from its document system. These letters were dated in October 2008, when GMAC Mortgage Corporation was the servicer of Christ's loan. The letters were not on letterhead and did not include any indication that they had been mailed, such as a certified or registered mail tracking number or other indicia of mailing. Nothing about the letters themselves indicate whether they were mailed by first class mail, as required by Paragraph 22, or otherwise delivered to Christ.

To attempt to prove that the letters were in fact mailed as required by Paragraph 22, Deutsche Bank offered the testimony of an employee of the successor servicer, Mark Feliciano, as follows:

> Q. Sir, does this document [the prior servicer's notes] contain any entries that relate to Plaintiff's Number 5?

> A. Could you clarify what Number 5 was?
>
> Q. Number 5 was the demand letters. ·
>
> A. Yes, sir. There is an entry of October 3, 2008. It says "Breach, Jeffrey Burleson". It cuts off the "n" of Mr. Burleson's last name. And there is a second entry that says "Breach, Gwen E. Christ".
>
> Q. Based upon your decade of experience in the mortgage servicing industry and having worked for I believe you testified three or four different servicers over that time, do you know why such an entry would be created?
>
> A. It says "breach." I'm assuming it's referring to the letter. That's what the letter says on it, too, at the top.
>
> Q. Is that consistent with actions taken by all servicers you've worked for over the course of your career?
>
> A. Yes. I've heard it referred to as "breach letter," "demand letter," "Notice of Intent," and abbreviated as "NOI." There's various ways of delineating it in collection notes.
>
> Q. Are you aware of an instance when a note would be made and a breach letter would not have been mailed?
>
> A. No.
>
> Q. As far as you're concerned, is it the policy that, any time a breach letter is mailed, there is an accompanying note to indicate such mailing?
>
> A. Every servicer I've worked for. I haven't worked for Chase, Wells Fargo, SLS. I can't speak to all of them.
>
> Q. And the date on this document, is that consistent with—
>
> A. — It's actually — the breach letter I'm looking at says October 2, 2008, and the entry is October 3, 2008.

Deutsche Bank contends that this testimony was sufficient to prove that the default letters were mailed in accordance with Paragraph 22. (Emphasis added.)

The problem with this testimony is that it does not, in fact, prove that the default letters found in the prior servicer's records were ever mailed. First, the entries in the prior servicer's records do not mention letters. Feliciano testified that he "assumed" that the October 3, 2008, entries in the prior servicer's notes, which said only "Breach, Jeffrey Burleson" and "Breach, Gwen E. Christ," were notes referring to the default letters, which were dated on October 2, 2008. However, these entries on their face do not reference the creation of any letter. Hence, Feliciano's assumption that these entries document the mailing of the default letters is just that—an assumption. It is not testimony based on either personal knowledge or knowledge of the prior servicer's business practices.

Second, even if these entries were intended to document the creation of the default letters, nothing in the prior servicer's notes indicate whether or how these letters were mailed. Neither the entry in the prior servicer's notes nor the letters themselves identify any form of mailing. Moreover, Feliciano admitted that he did not work for GMAC when the letters were allegedly prepared, nor had he ever worked for GMAC. Hence, he had no personal knowledge as to whether these letters were mailed or even what GMAC's general practices for mailing were. And while Feliciano testified that it was the general practice of the servicers he had worked for to make an entry in the servicer's notes when such letters were mailed, he also testified that he had never worked for GMAC and admitted that he "could not speak to" all servicers.

Several courts have addressed the type of testimony necessary for a successor servicer to establish that a prior servicer actually mailed default letters in compliance with Paragraph 22. For example, in Wells Fargo Bank, N.A. v. Balkissoon, 183 So. 3d 1272, 1277 (Fla. 4th DCA 2016), the trial court found the following testimony sufficient to support admission of a default letter:

Reyes demonstrated that he was sufficiently familiar with Bank of America's practice and procedure for generating and sending the default notice to meet the business records exception. He testified that the notice was made at or near the time of the events reflected therein and made by or from information transmitted by people with knowledge. Each night, Bank of America transmitted the information for loans in default to Waltz over a secure connection. Waltz used a Bank of America template to create the notice within two days of receiving the loan information. Waltz did not generate any of the information in the notice. Mr. Reyes testified that the copy of the notice was kept in the ordinary course of Bank of America's regularly conducted business activity and it was the regular practice of Bank of America to make this record. Once Waltz generated the notice and mailed it, Bank of America kept a copy of the notice in its records and made a note of the mailing date.

Similarly, in CitiMortgage, Inc. v. Hoskinson, 200 So. 3d 191, 192-93 (Fla. 5th DCA 2016), the court held that the following testimony was sufficient to raise a rebuttable presumption that a document was mailed:

> A rebuttable presumption of mailing can be shown through evidence of an organization's routine practice. § 90.406, Fla. Stat. (2014); see Brown v. Giffen Indus., Inc., 281 So. 2d 897, 899-900 (Fla. 1973). The witness testified to her personal knowledge of Appellant's general practice of delivering breach letters to the mail room, where they are collected by the postal service. Although the witness did not see the postal carrier collect the mail on the date in question, she had seen the carrier collect the mail at other times. This testimony created a rebuttable presumption that the letter was mailed in accordance with Appellant's general practice.

Here, in contrast, Feliciano did not—and could not—testify to GMAC's general practice of preparing and mailing default letters, nor could he testify as to its general practice for notating that a default letter was sent. Instead, Deutsche Bank relied solely on Feliciano's "assumption" about what an ambiguous entry in the prior servicer's records meant and his experience with servicers other than GMAC to establish proof of mailing. Because Feliciano's testimony was not based on either personal knowledge or his knowledge of GMAC's business practices, it was legally insufficient to constitute proof that the default letters in question were mailed. By failing to prove that the default letters were mailed, Deutsche Bank failed to prove that it complied with Paragraph 22 of the mortgage.

When Christ pointed out this failure as part of her motion for involuntary dismissal, the trial court found that the prior servicer's notes were sufficient to establish proof of mailing. But this finding is not supported by the evidence. The notes in question neither reference a default letter nor indicate in any manner that any document was mailed to Christ. Feliciano offered no testimony as to GMAC's general business practices for documenting or mailing default letters. The at-best ambiguous note in the prior servicer's records does not even suggest, must less prove, that a default letter was mailed to Christ. It certainly doesn't prove that it was mailed by first-class mail as required by Paragraph 22. And because Deutsche Bank offered no other evidence on the issue, it failed to prove that it had complied with the requirements of Paragraph 22 so as to be entitled to a foreclosure judgment in its favor.

In this appeal, as it did in the trial court, Deutsche Bank contends that Christ is not entitled to relief on this basis because her allegations were not sufficiently specific to raise and preserve the issue. Relying on Deutsche Bank National Trust Co. v. Quinion, 198 So. 3d 701 (Fla. 2d DCA 2016), Deutsche Bank asserts that Christ was required to identify in her pleadings the specific manner in which Deutsche Bank failed to comply with the requirements of Paragraph 22 in order for her defense to be legally sufficient. However, Quinion is factually distinguishable, and to hold as Deutsche Bank suggests would effectively excuse it from its obligation to prove as part of its prima facie case that it had complied with the requirements of the mortgage.

In Quinion, the foreclosure defendants alleged, among other things, that Deutsche Bank "failed to comply with the requirements of . . . § 559.715[,] Fla. Stat." 198 So. 3d at 702 (alteration in original). The defendants did not identify any specific portion of section 559.715 with which they contended Deutsche Bank failed to comply. Noting that Florida Rule of Civil Procedure 1.120(c) requires that "[a] denial of performance or occurrence shall be made specifically and with particularity," this court held that the defendants' affirmative defense was legally insufficient because

> the answer did not allege how Deutsche Bank failed to satisfy this statute's requirements. Nor did their denial indicate what within the statute was supposed to occur but did not. From such a broad assertion of

denial, one could plausibly construe at least three different potential positions on the part of the Cresons: that Deutsche Bank failed to send any prior notice of an assignment of the mortgage; that it sent a notice but outside of the thirty-day deadline; or that it sent a timely notice but failed to adequately inform the borrower of the assignment. That is the kind of pleading ambiguity rule 1.120(c) was meant to ameliorate.

Id. at 704 (footnote omitted). Hence, this court concluded that "to construct a proper denial under the rule, a defendant must, at a minimum, identify both the nature of the condition precedent and the nature of the alleged noncompliance or nonoccurrence." Id. at 703-04.

Here, however, unlike in Quinion, the disputed issue was not Deutsche Bank's compliance with a statute of general applicability. Instead, the disputed issue related to Deutsche Bank's compliance with a particular condition of its own mortgage contract with Christ. This factual difference renders Quinion of questionable relevance.

The real question is whether rule 1.120(c), and thus its heightened pleading requirement, applies to this matter at all. Here, in paragraph 13 of its complaint, Deutsche Bank alleged that it had complied with all conditions precedent to foreclosure. In her answer, Christ specifically denied that allegation. She also alleged in her eighth affirmative defense that Deutsche Bank had failed to comply with the requirements of Paragraph 22 of the mortgage. The denial of paragraph 13 of the complaint, when combined with the identification in the eighth affirmative defense of Paragraph 22, raised the issue of whether Deutsche Bank had complied with the contractual notice requirements before filing the foreclosure action. And, as the Fifth District has explained, when the foreclosure defendant does not "seek to avoid liability under the agreement" but instead is arguing that the bank "prematurely filed suit before complying with all pre-foreclosure requirements," the situation is "analogous to those in which the defendant specifically denied that the plaintiff performed all pre-suit notice requirements, which shifted the burden back to the plaintiff to address the subject matter of the denial." Palma v. JPMorgan Chase Bank, 208 So. 3d 771, 774 n.3 (Fla. 5th DCA 2016) (citing Nelson v. Hillsborough County, 189 So. 3d 1037, 1039 (Fla. 2d DCA 2016); and Sheriff of Orange Cnty. v. Boultbee, 595 So. 2d 985, 987 (Fla. 5th DCA 1992)). To hold that Deutsche Bank was not required to establish its compliance with any part of Paragraph 22 because Christ did not identify each individual provision of Paragraph 22 that she disputed would effectively excuse Deutsche Bank from its obligation to prove one of the elements of its prima facie case, i.e., its compliance with the requirements of the mortgage contract. Such a holding would also render Christ's denial of Deutsche Bank's allegation of compliance ineffective and remove the need for the Plaintiff bank to carry its burden of persuasion — the sine qua non of any civil suit.

Moreover, this case does not present a situation in which Deutsche Bank did not have sufficient notice of Christ's defense. The purpose of rule 1.120(c)'s heightened pleading requirement is "to put the burden on the defendant to identify the specific condition that the plaintiff failed to perform—so that the plaintiff may be prepared to produce proof or cure the omission, if it can be cured." Suarez v. Wells Fargo Bank, N.A., 201 So. 3d 694, 697 (Fla. 4th DCA 2016) (quoting Godshalk v. Countrywide Home Loans Servicing, L.P., 81 So. 3d 626, 626 (Fla. 5th DCA 2012)). Here, Deutsche Bank came to trial prepared to prove its compliance with Paragraph 22; it simply failed to do so. This failure was due to a failure of proof, not a lack of notice.

In short, the pleadings in this case placed Deutsche Bank on notice that Christ was disputing its compliance with the requirements of Paragraph 22 of the mortgage. Deutsche Bank arrived at trial prepared to prove its compliance; however, the evidence it offered was not competent, substantial evidence that the default letters were ever actually mailed in accordance with the requirements of Paragraph 22. Having failed to prove that it had complied with all of the conditions of the mortgage contract that were prerequisites to allowing it to foreclose on the security, Deutsche Bank was not entitled to a foreclosure judgment in its favor.

Therefore, we must reverse the final judgment in favor of Deutsche Bank and remand for entry of judgment in favor of Christ.

Reversed and remanded with instructions.

NORTHCUTT and SILBERMAN, JJ., Concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Save trees - read court opinions online on Google Scholar.